**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| SETTLEMENT FUNDING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06CV595–HEH |
| | ) | |
| LUMP CAPITAL, LLC, SENECA ONE, | ) | |
| LLC, and SENECA ONE FINANCE, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Granting Plaintiff/Counterclaim Defendant's**
**Motion for Partial Dismissal of the Counterclaim)**

This tortious interference with contract dispute is before the Court on Plaintiff's

Motion for Partial Dismissal of Defendants' Counterclaim. Both sides have filed

memoranda of law in support of their respective positions. The Court will dispense with

oral argument because the facts and legal contentions are adequately presented in the

materials before the Court, and argument would not aid in the decisional process.

In its Complaint, Plaintiff contends that the defendants wrongfully induced a

winner of the Virginia State Lottery to breach a valid contract for the sale of a portion of

his Lottery proceeds. Plaintiff further claims that in persuading the Lottery winner to

abandon his contract with Plaintiff, the defendants made defamatory statements

concerning Plaintiff's business practices in dealing with other lottery winners.

Presently at issue is the counterclaim filed by Defendants, which seeks a declaratory judgment defining the mandatory fee disclosure requirements associated with the assignment of lottery proceeds in fifteen states, including Virginia. In addition, Defendants request a declaration that Plaintiff has breached contracts with lottery winners in fourteen other states by failing to disclose those administrative fees.

Plaintiff urges the Court to exercise its discretionary jurisdiction to confine the scope of Defendants' declaratory relief to the fee disclosure requirements under Virginia law. Plaintiff maintains that there is no active case or controversy before this Court involving lottery winners in other states. Moreover, in Plaintiff's view, for this Court to render a formal opinion delineating the regulatory requirements of fourteen other states would be an officious exercise of power, violative of fundamental notions of comity and federalism. This Court agrees. For the reasons that follow, Plaintiff's Motion for Partial Dismissal of Defendants' Counterclaim will be granted.

Although the factual statements of the parties reveal some discrepancies, none are material to the resolution of this motion. In 1996, Robert Johnson ("Johnson"), a resident of the Commonwealth of Virginia, won the Virginia Lottery, entitling him to receive $7,191,475.54. Johnson opted to receive twenty annual payments of approximately $360,000.00 each. According to the counterclaim, in December 2004, Johnson entered into a Lottery Prize Assignment Agreement with Defendant Lump Sum Capital, LLC ("Lump Sum"). Under the terms of the agreement, Lump Sum received a first right of

2

refusal, entitling it to bid on the remainder of Johnson's prize before he agreed to sell it to another company.  This agreement was approved by the Circuit Court of the City of Richmond, as required by Virginia law.

Johnson subsequently entered into an agreement (the "Sales Agreement") to convey the balance of his Lottery payments to Plaintiff Settlement Funding, LLC ("Settlement Funding") for investment in a program known as Asset Advantage.  Lump Sum was not offered an opportunity to submit a competing bid.  Under the Sales Agreement, Settlement Funding agreed to pay Johnson a lump sum amount in exchange for the assignment of a portion of ten of his annual Lottery payments.  Pursuant to Virginia Code § 58.1-4020.1, of the Lottery Act, Johnson had a statutory three-day recision period, which he failed to exercise.  Several weeks later, Settlement Funding received a letter from Johnson, expressing a desire to rescind the Sales Agreement.

Plaintiff alleges that sometime following the execution of the Sales Agreement, a representative of Lump Sum confronted Johnson with the pre-existing agreement and, under the threat of litigation, coerced him into signing a contract for the assignment of his Lottery payments to Lump Sum.  According to Plaintiff, in its attempt to persuade Johnson to rescind his Sales Agreement with Plaintiff, the defendants informed Johnson that Settlement Funding did not honor its contracts with lottery winners.[1]  The second

---

[1]Defendants maintain in their counterclaim that Plaintiff failed to provide lottery winners with statutorily required written fee disclosure statements. Specifically, Defendants claim the Plaintiff failed to reveal the annual recurring fees associated with the Asset Advantage program.

agreement with Lump Sum for the assignment of Johnson's Lottery payments was later approved by the Circuit Court for the City of Richmond, in accordance with Virginia law. This lawsuit followed.

In its answer to the complaint, the defendants allege that the derogatory comments to Johnson, the Lottery winner, regarding Plaintiff's business practices were true or substantially true.  In addition, in their counterclaim, Defendants seek the following declarations:

1.     That the lottery statutes of the fifteen named states require the purchaser of a prize to provide the lottery winner with a separate written disclosure statement detailing all of the fees charged to the winner;

2.     That Plaintiff has violated one or more of these statutory requirements by neglecting to include certain fees associated with Asset Advantage in its disclosure statement;

3.     That Plaintiff's violations of the statutory disclosure requirements constitute breaches of Plaintiff's contracts with lottery winners; and

4.     That Plaintiff has, therefore, breached its contracts with lottery winners on numerous occasions in the fifteen states.[2]

---

[2]The fifteen states include: Connecticut, Florida, Illinois, Kentucky, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Texas, Vermont, Virginia, and Washington.  According to the counterclaim, Plaintiff does business in each of these states.

4

In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the United States Supreme Court characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id*. at 287 (internal quotations omitted).  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*. at 288.  The United States Court of Appeals for the Fourth Circuit has long recognized that district courts have discretion in determining whether to render declaratory relief, and their decision to decline to exercise such jurisdiction is reviewable for abuse of discretion.  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421–22 (4th Cir. 1998).

The initial step in deciding whether to grant relief under the Declaratory Judgment Act is to determine whether the Court has subject matter jurisdiction and whether an actual controversy exists.  28 U.S.C. § 2201(a); *see also Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004).  In determining whether a justiciable controversy exists, the Court must decide whether the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).  "It must be a real and substantial controversy admitting of specific relief though a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*.  The controlling question is "whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167–68 (4th

Cir. 1990) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273

(1941)).  Once it is established that the Court has Article III jurisdiction, it may then turn

to the question of whether to exercise its discretion to render a declaratory judgment.

*White*, 913 F.2d at 167.

 The relief sought by the defendants in their counterclaim is neither limited to the

regulatory statute nor the contract directly at issue in this case.  It requires this Court to

determine fee disclosure requirements for lottery statutes in fourteen states outside the

Commonwealth of Virginia, and to determine whether or not the plaintiff has violated

these statutory disclosure requirements with respect to lottery winners not before the

Court.[3]  There is no indication that any of the lottery winners are seeking invalidation of

their contracts or a judicial declaration of their rights.

 From the record at hand, this Court cannot determine whether the pertinent

portions of those fourteen lottery statutes are currently in litigation or have been

interpreted by their enacting states.  Furthermore, the parties to this case appear to have

no "adverse legal interests" with respect to contracts with lottery winners in the other

---

[3]It is doubtful that this Court would have jurisdiction over the parties to the foreign contracts Defendants ask this Court to adjudicate.  Clearly, Defendants have no standing to intervene in the contractual relations of those parties.

fourteen states.  As part of its defense to the defamation claim, the defendants may well

prove that Plaintiff has engaged in inappropriate, and perhaps unlawful, business

practices in other states.  This, however, does not create the type of substantial

controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment."  *Maryland Cas. Co.*, 312 U.S. at 273; *see also Haworth*, 300 U.S. at 239–42.

There is a vast difference between interpreting the law of another state within the context

of this case and issuing a declaratory judgment formally adjudicating the regulatory

requirements of a statute of another sovereign state.  The facts of this case fail to meet the

prerequisites of discretionary Article III jurisdiction.

Even if this Court found that Defendants' counterclaim presented an active case or

controversy, it would be an inappropriate exercise of judicial discretion to entertain the

relief requested.  In assessing the advisability of hearing a case seeking declaratory

judgment, a district court should consider whether the action will both "serve a useful

purpose in clarifying and settling the legal relations in issue" and "will terminate and

afford the relief from the uncertainty, insecurity, and controversy giving rise to the

proceeding."  *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).  In this

Court's view, neither goal will be accomplished in this case through declaratory

judgment.  While an articulation of the fee disclosure requirements of lottery statutes in

the other states may assist in the defense of the lawsuit before the Court, it would not

clarify and settle the legal relations of the present parties or the "controversy giving rise to

the proceeding."  Furthermore, it is unnecessary to the resolution of the substantiative claims at issue.

There are several other factors that convince the Court that declaratory judgment is inappropriate in this case.  In *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994), the court offered a number of additional considerations governing the exercise of discretion in declaratory judgment cases.  District courts should also take into account: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court; (2) whether the issues raised in the federal action can be more effectively resolved in the pending state action; (3) whether the federal action would result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or law; and (4) whether the federal action is being used merely as a device for procedural fencing.  *Id*. at 377.  While not all of these factors are relevant to this case, a number are instructive.

The defendants urge this Court to interpose its judgment for the highest courts of fourteen other states.[4]  In adjudicating the claims in this case, it is certainly appropriate for this Court to review, and to the extent relevant, apply the pertinent regulatory statutes of those states.  This would not require declaratory relief but simply the application of existing law.  However, to add an interpretive gloss to the text of a regulatory statute under the facts of this case would, in this Court's view, offend principles of federalism

---

[4]This is no indication in the record that the courts of any of the fifteen states, except perhaps for Virginia, have issued opinions constructing fee disclosure requirements.

and comity.  As the Fourth Circuit has recognized, "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." *Mitcheson v. Harrison*, 955 F.2d 235, 237 (4th Cir. 1992).  The absence of a parallel pending state court proceeding in those fourteen states does not change the analysis.  *See Aetna Sur. Co.*, 139 F.3d at 423.

The Supreme Court, in *Wilton v. Seven Falls Co.*, pointed out that considerations of practicality and wise judicial administration may also control the Court's exercise of discretion in the declaratory judgment context.  *See Wilton*, 515 U.S. at 288.  The relief requested by Defendants requires this Court to first issue an opinion interpreting the statutory regulations of fourteen states and then determine whether Plaintiff's failure to abide by those regulations constituted breaches of contracts with other lottery winners.  In construing the fee disclosure requirements of the lottery statutes of these fourteen states, the Court would necessarily have to consider the legislative history of each statute, interpret relevant regulations, review administrative policy, and perhaps take into consideration course of dealings on each contract.  Because of the arguable precedential effect of such declaratory judgment, this Court may be obliged to afford the Attorneys' General of each of those fourteen states an opportunity to be heard before rendering judgment.  The effect would be to eclipse the underlying tortious interference with contracts and contract claims.  The diversionary effect would be even more pronounced if

9

this Court's attention were consumed by an adjudication of Plaintiff's contracts with other lottery winners in those states.[5]  The effect would be to expand the contours of this case exponentially.  This Court declines to do so.

In the final analysis, this Court is of the opinion that it would be improvident to exercise its discretion to grant declaratory relief in this case beyond the Virginia Lottery Statute.  To do so would "draw into the federal courts the adjudication of causes properly cognizable by courts of the states."  *See Aetna Cas. & Sur. Co.*, 92 F.2d at 324.

Plaintiff's Motion for Partial Dismissal of Defendants' Counterclaim will therefore be granted as to the fourteen states other than the Commonwealth of Virginia.

An appropriate Order will accompany this Memorandum Opinion.


                                        _____/s/_____

                                        Henry E. Hudson
                                        United States District Judge


Entered this 22nd day of December, 2006.
Richmond, VA

_____

[5]There is no indication in the record of the number of contracts to be potentially reviewed in connection with Defendants' counterclaim.  In order to determine whether there has been a possible violation, or perhaps a waiver, of a state's disclosure requirement, this Court may need to examine the negotiations and discussions attending each agreement.  This may entail dozens of depositions at considerable expense.  Moreover, many of the lottery winners may be satisfied with their contract and resist any attempt by a third party interloper to have it declared invalid.